**Dennis WURM, Appellant,**

v.

**JOHN DEERE LEASING COMPANY,**
**Scharber & Sons, Inc., Respondents.**

**No. Cl–86–1929.**

Court of Appeals of Minnesota.

May 12, 1987.

Gregory S. Hagge, Reed & Pond, Ltd., Mound, for Dennis Wurm.

Eric J. Magnuson, Karen Park-Gallivan, Rider, Bennett, Egan & Arundel, Minneapolis, for John Deere Leasing Co.

Robert J. Miller, Meyer and Miller, New Hope, for Scharber & Sons, Inc.

Heard, considered, and decided by FORSBERG, P.J., and RANDALL and STONE *, J.

## OPINION

FORSBERG, Judge.

Dennis Wurm appeals from the trial court's judgment dismissing his complaint with prejudice in an action against respondents seeking to revoke his acceptance of a John Deere tractor, and seeking damages for misrepresentation, and breach of express and implied warranties. We affirm in part, reverse in part and remand.

## FACTS

Appellant Dennis Wurm, his father, and his two brothers own and operate a farm in Wright County, Minnesota, and rent other farm land. The exact business relationship among them is unclear; however, they do divide the land and each farms separately. Before 1982, appellant owned a John Deere Model 8440 tractor. He also owned accessory equipment used with the tractor, including a 30′ field cultivator and a 7-bottom plow. Appellant decided to upgrade his farm equipment and purchase a new 4-wheel drive tractor, desiring a larger, more powerful tractor. Appellant obtained a John Deere handbook containing specifications on a new Model 8650 tractor. He reviewed the specifications, noted the horsepower figure on the 8650, and decided to purchase the tractor.

Appellant signed the purchase order for the Model 8650 tractor on June 29, 1982. The tractor was to be delivered on or about November 1, 1982. Respondent Scharber was to accept a used John Deere Model 8540 as a trade-in, in addition to a $10,000 rebate, which reduced the $104,137.00 delivered cash price to $41,650.00.

Later that summer, in late August or early September, appellant looked at a larger Deere tractor at the Scharber & Son's exhibit at the State Fair. Appellant's father then bought a Versatile Model 895 tractor. Appellant decided that he too wanted the larger, Versatile tractor rather than the 8650 he had ordered from respondent. At this time, appellant's brothers expressed an interest in purchasing a Deere Model 8650. Since appellant not only had signed a contract to buy the 8650, but also had a $10,000 rebate which was not available to his brothers, appellant decided to go ahead with the transaction and let his brothers use the 8650 while he used his father's Versatile. He then decided to lease, rather than buy the 8650, and executed a five-year lease agreement with respondent John Deere Leasing Company on November 18, 1982, beginning February 1, 1984. The lease price was to be offset by a payment of $62,487.00, which represented the trade-in and rebate amounts.

The 8650 was delivered in the fall of 1982. Appellant never used the 8650, but his brothers did. In the fall of 1983, appellant's brothers had a number of problems with the tractor. Some related to the inability of the tractor to handle the large accessory equipment purchased in the following year for the Versatile tractor. Appellant then commenced this action against

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

respondents John Deere and Scharber to revoke his acceptance of the tractor, and to recover rental payments and lost profits. Appellant's claims were based upon alleged defects in the tractor, misrepresentations, and breaches of express and implied warranties. John Deere denied the allegations and counterclaimed for unpaid lease payments.

Appellant's deposition was taken, during which he admitted the inaccuracy of various allegations of his complaint. Appellant then moved the trial court to amend his complaint by adding his brothers as plaintiffs to the action. John Deere cross-moved to dismiss the complaint, including excerpts of the deposition in support of its motion. The trial court granted Deere's motion and denied appellant's motion. A judgment of dismissal with prejudice was entered on October 21, 1986. Appeal is taken from this judgment.

## ISSUES

1. Did the trial court clearly abuse its discretion in denying appellant's motion to amend his complaint?

2. Did the trial court err in granting respondent Deere's motion for summary judgment?

## ANALYSIS

### I.

Rule 15.01 allows a party to amend his complaint only by leave of court or by written consent of the adverse party. Leave shall be freely given when justice so requires. Minn.R.Civ.P. 15.01. The trial court has broad discretion in determining whether to allow an amendment, and this court will reverse only if a clear abuse of discretion is shown. *See, e.g., Warrick v. Giron,* 290 N.W.2d 166, 169 (Minn.1980). Appellant moved to amend his complaint to add his brothers as plaintiffs to the action. Neither brother moved to intervene or to be joined as a party. Respondents argue that appellant has no standing to assert his brothers' claims. In *Cybyske v. Independent School District No. 196,* 347 N.W.2d 256 (Minn.), *cert. denied,* 469 U.S. 933, 105

S.Ct. 330, 83 L.Ed.2d 266 (1984), the Minnesota Supreme Court addressed this issue. In *Cybyske,* the plaintiff teacher brought an action against the school district, claiming in part that she had not been hired by the school district because of marital status discrimination. Plaintiff claimed that the school district had not hired her because it did not like her husband's "pro-teacher views." *Id.* at 258–59. Plaintiff then moved to amend her complaint to add her husband as an additional plaintiff. The supreme court affirmed the denial of her motion, stating:

> We cannot say the trial court exceeded its discretion in denying the motion. We observe that Lynne Cybyske tries to bring her husband into the lawsuit by amending her own pleadings under Rule 15.01. Her husband did not move to intervene or to be joined as a party, nor is he here on appeal. We do not see how Lynne has standing here to assert Daniel's claim.

*Id.* at 264. As in *Cybyske,* we do not believe that appellant has standing to raise his brothers' claims.

Moreover, respondents also argue that his brothers have no rights under the written contract and, therefore, appellant's proposed amendments fail to assert a cognizable legal claim. *See Eisert v. Greenberg Roofing & Sheet Metal,* 314 N.W.2d 226 (Minn.1982). Under Minnesota law, strangers to a contract acquire no rights under the contract. *Anderson v. First Northtown Nat'l Bank,* 361 N.W.2d 116, 118 (Minn.Ct.App.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1999, 90 L.Ed.2d 680 (1986). Unless the contract expresses some intent by the parties to benefit a third party through contractual performance, a beneficiary is no more than an incidental beneficiary and cannot enforce the contract. *Cretex Companies v. Construction Leaders, Inc.,* 342 N.W.2d 135, 139 (Minn. 1984). The lease agreement in this action does not express an intent to benefit a third party. Appellant is the only person identified as a lessee. Since appellant's brothers did not have privity of contract with Deere, nor were they intended benefi-

ciaries mentioned in the contract, they cannot recover under the contract and, thus, have no claim against Deere. Therefore, the trial court did not clearly abuse its discretion in denying appellant's motion to amend his pleadings.

## II.

█ Appellant argues that the court improperly granted respondent's motion to dismiss, which was converted into a motion for summary judgment by the court's consideration of the deposition testimony. Respondents did not comply with the ten-day notice requirement in Minn.R.Civ.P. 56.03. Appellant argues that therefore it was error to grant the motion, citing *McAllister v. Independent School District No. 306*, 276 Minn. 549, 149 N.W.2d 81 (1967).

*McAllister* is the leading case on the effect of the notice requirement in a motion for summary judgment. In *McAllister*, defendants noticed a motion to dismiss plaintiffs' complaint. As here, the trial court considered matters outside the pleadings and converted the motion into one for summary judgment. The notice of motion was served upon plaintiffs only five days before the hearing. The Minnesota Supreme Court held that the ten-day notice requirement for a summary judgment motion was mandatory, and, absent a clear waiver by the adversary, the judgment must be reversed. *Id.* at 550, 149 N.W.2d at 82.

Respondents argue that appellant was not prejudiced by the lack of notice, and therefore, the motion was properly granted, citing *Del Hayes & Sons, Inc. v. Mitchell*, 304 Minn. 275, 230 N.W.2d 588 (1975). In *Del Hayes*, the trial court granted summary judgment *sua sponte* on the day of trial. The *Del Hayes* court distinguished *McAllister* by noting that the plaintiffs in *McAllister* not only opposed the motion on the basis of lack of notice, but also claimed that they had other evidence to submit. *Del Hayes* at 279, 230 N.W.2d at 591.

The *Del Hayes* court affirmed the grant of summary judgment, stating that: the trial court raised the issue supporting the grant of summary judgment in the pre-trial conference and order; on the day before

trial, the court allowed defendants an opportunity to make an offer of proof; defendants attempted to show genuine fact issues precluding summary judgment; defendants did not, at that time, object to the trial court's procedure; and no prejudice was shown. *Id.*

This court was recently presented with a similar issue in *Bush v. City of Lakefield*, 399 N.W.2d 169 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. March 18, 1987). In *Bush*, we affirmed the trial court's grant of summary judgment. As in *McAllister*, the motion was initially noticed as one for dismissal. The request that the motion be regarded as one for summary judgment came in respondents' post-hearing responsive memorandum. The ten-day notice requirement of Rule 56.03 was not met. The trial court, however, gave appellant the opportunity to respond to the post-hearing memorandum, imposing no time limit. Although we reiterated the *McAllister* rule that the ten-day notice requirement is mandatory unless waived by the parties, we held that appellant, by his failure to respond to the memorandum had waived any objection to respondents' request to treat the motion as one for summary judgment. *Id.* at 172.

In this case, as in *Bush*, the trial court allowed appellant ten days after the October 10th hearing to submit additional memoranda or evidence opposing the motion. Appellant attempts to distinguish *Bush* by claiming that the trial court did not wait the full ten days, but issued an order granting summary judgment just three days after the motion. Appellant, however, fails to note that judgment was not entered in this matter until October 21, 1986, showing that the trial court did indeed await appellant's response. Moreover, appellant does not claim that he has been prejudiced in any way. Thus, we hold that the trial court properly considered the motion as one for summary judgment.

█ The remaining issue is whether Deere is entitled to summary judgment on appellant's claims. We must view the facts most favorable to the nonmoving party. Deere is entitled to summary judgment

only if no genuine issue of material fact remains. *See Burma v. Stransky,* 357 N.W.2d 82, 89 (Minn.1984). Respondents vigorously argue that appellant has admitted in his deposition that he has no claim whatever against either Deere or Scharber.

Appellant's claims were based on alleged defects in the tractor, misrepresentations, and breaches of express and implied warranties. In his deposition, appellant testified that he did not rely on any representations made by Scharber in purchasing the 8650. He admitted that he did not know of any facts which would support a finding that anyone at John Deere had deceived or defrauded him. Appellant admitted that he personally did not suffer any lost profits as a result of the transaction. Nevertheless, he did not state that he had no other damages.

What survives the deposition is appellant's right to revoke his acceptance of the tractor due to its allegedly defective condition or the breach of an implied warranty of merchantability.

Minn.Stat. § 336.2–608 governs a buyer's revocation of acceptance. The statute provides:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to the buyer if it was accepted

(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(b) without discovery of such nonconformity if the acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

Minn.Stat. § 336.2–608 (1986).

Section 336.2–314 governs implied warranties of merchantability. The statutes provides in relevant part:

(1) Unless excluded or modified, * * * a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. * * *

(2) Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description; and

\* \* \* \* \* \*

(c) are fit for the ordinary purposes for which such goods are used;

\* \* \* \* \* \*

Minn.Stat. § 336.2–314 (1986).

Respondents argue that appellant has admitted that the tractor was not defective. We disagree. Appellant testified that his brothers had experienced several mechanical and electrical difficulties with the tractor. He further stated that the tractor was in "terrible condition."

Respondents argue that appellant cannot, as a matter of law, rightfully revoke his acceptance of the tractor, since his brothers were the individuals using the tractor. They conclude that the value of the tractor was not substantially impaired *to appellant* as required by the statute. Respondents do not claim that there was an assignment or novation of the contract. Appellant is still the owner of the lessee's interest. We find it irrelevant that appellant allowed his brothers to use his tractor. Appellant is the individual liable for payments on the tractor, not his brothers. Moreover, allowing his brothers to use the tractor neither implies that appellant will never use the tractor himself, nor that he is indifferent to the condition of the goods he purchased. The value of the tractor may be substantially impaired to appellant even though he is not presently using it.

We hold that summary judgment on the claims of implied warranty of merchantabil-

ity and revocation were improperly granted.

## DECISION

The trial court's denial of appellant's motion to amend his complaint is affirmed. Appellant did not have standing to add his brothers as additional party plaintiffs absent a motion by them to intervene or to be joined as parties. Further, the brothers could not recover under the contract since they were neither in privity of contract with Deere, nor were they intended beneficiaries of the contract. Appellant admitted that he did not rely on any representations in purchasing his 8650, other than Deere specifications, therefore, the trial court properly granted partial summary judgment on his claims of misrepresentation and breach of an express warranty. Nevertheless, there remain genuine issues of material fact as to alleged defects in the tractor. This case is remanded for trial to determine whether respondents breached an implied warranty of merchantability, or whether appellant rightfully revoked his acceptance of the tractor.

Affirmed in part, reversed in part and remanded.